**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**STATESVILLE DIVISION**
**Case No. 5:19-cv-00144**

| | |
|---|---|
| TERRY EQUIPMENT, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| BUCHER MUNICIPAL NORTH | ) |
| AMERICA, INC. f/k/a JOHNSTON | ) |
| NORTH AMERICA, INC., | ) |
| | ) |
| Defendant. | ) |
| | ) |

## COMPLAINT AND DEMAND FOR JURY TRIAL

NOW COMES Plaintiff Terry Equipment, Inc., by and through counsel, complaining of Defendant Bucher Municipal North America, Inc. f/k/a Johnston North America, Inc., and alleges as follows on personal knowledge except when stated upon information and belief:

## PARTIES

1.      Plaintiff Terry Equipment, Inc. ("Terry Equipment") is a California Corporation with its principal place of business in San Bernardino County, California.

2.      Upon information and belief, Defendant Bucher Municipal North America, Inc. f/k/a Johnston North America, Inc. ("Johnston") is a Delaware Corporation.

3.      Upon information and belief, Johnston engages in substantial business activity and maintains its principal place of business in Iredell County, North Carolina.

## JURISDICTION AND VENUE

4.     Jurisdiction is conferred on this Court by 28 U.S.C. § 1332. The amount in controversy in this action exceeds Seventy Five Thousand and 00/100 Dollars ($75,000.00), exclusive of interest and costs, and the controversy is between citizens of different States.

5.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(1) and (c) in that Defendant Johnston is subject to the Court's personal jurisdiction within respect to the civil action in question and is a resident of this State for purposes of venue.

6.     The parties to this action have stipulated and agreed that any action, claim, suit or proceeding between them, whether based on federal, state, statutory, or common law, shall be litigated solely and exclusively before the United States District Court for the Western District of the State of North Carolina. Upon information and belief, Defendant Johnston also maintains its principal place of business and engages in substantial activity in Iredell County, North Carolina. This Court has personal jurisdiction over the non-resident Defendant by virtue of its consent and pursuant to N.C. Gen. Stat. §§ 1-75.4(1)(d).

## FACTS

### Johnston and Terry Equipment Enter into an Exclusive Distributorship Agreement

7.     Johnston is an international manufacturer of outdoor surface cleaning equipment.

8.     Johnston's North American headquarters is based in Mooresville, Iredell County, North Carolina.

9.     In order to distribute its product throughout North America, Johnston engages the services of independent distributors.

10.    Terry Equipment sells and distributes equipment used by contractors and municipalities throughout the western United States.

11.     In early 2017, Johnston approached Terry Equipment about the possibility of distributing its sweeper trucks, parts and services in Nevada and California. Johnston was having difficulty in this territory because many of its customers and potential customers in the western United States wanted a local dealer and Johnston was headquartered in the eastern United States in North Carolina.

12.     On or about February 20, 2017, Johnston entered into a General Sales Manual (the "Agreement") with Terry Equipment with an initial term through December 31, 2018 ("Initial Term").  A copy of the Agreement is attached hereto as **Exhibit 1** and is incorporated herein by this reference.

13.     The Agreement was drafted by Johnston.

14.     Under Part 12 of the Agreement, all notices, demands, and other communications under the Agreement were required to be in writing and transmitted by overnight courier to the other party.

15.     Pursuant to Part 3, Section 1 of the Agreement, Terry Equipment was appointed to act as an exclusive distributor for Johnston of Johnston-branded equipment, parts and services in Nevada and Johnston-branded parts and services in California.

16.     Part 3 of the Agreement allowed Johnston to reserve the right to sell equipment directly and/or through one or more third parties to "house accounts" identified in the Agreement, whether inside or outside of Terry Equipment's exclusive territory. However, Johnson didn't identify any such "house accounts" in the parties' Agreement and, therefore, didn't reserve the right to sell Johnston-branded equipment, parts and/or services in Terry Equipment's exclusive territory.

17.     On April 1, 2017, Johnston and Terry Equipment entered into a written agreement which modified the original territory (also known as the assigned area of primary sales and service responsibility or APSR) to include Johnston-branded equipment, parts and services in Nevada, Johnston-branded equipment in San Luis Obispo, Kern, San Bernardino, Santa Barbara, Ventura, Los Angeles, Orange, Riverside, San Diego and Imperial, and Johnston-branded parts and service in all of California (the "First Amendment"). A copy of the First Amendment is attached hereto as **Exhibit 2** and is incorporated herein by this reference.

18.     No terms of the Agreement other than the definition of Terry Equipment's exclusive territory were modified or amended by the First Amendment.

19.     In or around August 2017, Johnston offered to extend Terry Equipment's territory even further to include the sale of Johnston-branded equipment in all of California if Terry Equipment agreed to hire one of Johnston's sales representatives, Russell Dysard. On September 12, 2017, Terry Equipment accepted Johnston's offer and agreed to hire Russell Dysard effective September 18, 2017. Terry Equipment did so in reliance on Johnston's assurance that its territory would be expanded and would thereafter include Johnston-branded equipment, parts and services in all of Nevada and California (the "Second Amendment").

20.     On September 12, 2017, Scott Carey, Johnston's Western Regional Sales Manager, emailed Johnston's General Manager, Todd Parson, in pertinent part, as follows:

> Todd-
> Looks like from this email Russell will be starting Monday 09.18.2017. We need revise Terry Equipment Contracts for the entire state of California.

21.     When Terry Equipment attempted to follow up with Johnston on the Second Amendment, Johnston assured Terry Equipment that it was working on a document to memorialize the parties' verbal agreement to expand Terry Equipment's exclusive territory under

the Agreement. Johnston and Terry Equipment treated the Second Amendment as though it was already in effect in that, with Johnston's knowledge and consent, Terry Equipment began selling Johnston-branded equipment in northern California.

22. No terms of the Agreement other than the definition of Terry Equipment's exclusive territory were modified or amended by the Second Amendment.

**Terry Equipment Entitled to Exclusivity in its Territory
During the Term of the Agreement**

23. Pursuant to Part 3, Section 3 of the Agreement, as amended, Terry Equipment was entitled to remain the exclusive distributor of Johnston-branded equipment, parts and services in Nevada and California until or unless it failed to meet the performance requirements set forth in Part 11 of the Agreement.

24. Part 11 of the Agreement ("Part 11 Performance Requirement") provides as follows:

- Minimum amount of Johnston-branded surface sweeper units purchased by Distributor from Johnston during the term of this Agreement (in US Dollars): shall be **TBD** units.
- Minimum amount of Johnston-branded replacement parts purchased by Distributor from Johnston during the term of this Agreement (in US Dollars): shall be $20,000. This performance requirement, insofar as it applies to surface sweeper units, may be satisfied only through the purchase of surface sweeper units which (i) are used as demonstration models or (ii) are made in connection with bona fide orders from Distributor's customers.

25. Johnston and Terry Equipment never signed a written agreement modifying or amending the Part 11 Performance Requirement or establishing any Johnston-branded surface sweeper unit performance requirement. Therefore, as long as Terry Equipment purchased at least $20,000.00 in Johnston-branded replacement parts during the term of the Agreement it satisfied the Part 11 Performance Requirement.

26.     In 2017 and 2018, during the Initial Term of the Agreement, Terry Equipment purchased $61,509.82 and $131,215.90, respectively, in Johnston-branded replacement parts.

27.     Pursuant to Part 7 of the Agreement, upon expiration of the Initial Term, the term of the Agreement renewed on a year-to-year basis, unless either party provided the other party with notice of its intent not to renew at least sixty (60) days prior to the expiration of the Initial Term.

28.     Neither Johnston nor Terry Equipment provided notice of intent not to renew at least sixty (60) days prior to the expiration of the Initial Term.  As a result, on December 31, 2018, the Agreement renewed under the same terms and conditions for an additional year through and including December 31, 2019.

29.     Terry Equipment remained in compliance with the Part 11 Performance Requirement during the renewal term. Specifically, from January 1 to July 15, 2019, Terry Equipment purchased an additional $74,644.89 in Johnston-branded replacement parts.

30.     Because Terry Equipment at all times relevant to the Agreement satisfied the Part 11 Performance Requirement it was entitled to remain the exclusive distributor of Johnston-branded equipment, parts and services in Nevada and California and Johnston was not allowed to convert Terry Equipment's territory from exclusive to non-exclusive.

**Johnston Sells Johnston-branded Products in Terry Equipment's Exclusive Territory**

31.     In or around January 2018, Terry Equipment had its first and only performance review with Johnston. This performance review was conducted by Scott Carey, Johnston's Western Regional Sales Manager. During the review the parties discussed Terry Equipment's first year's parts sales figures, which according to Johnston totaled $95,107.00. In response to Terry Equipment's sale, Mr. Carey inadvertently mentioned that Johnston had sold $181,754.00

in Johnston-branded replacement parts in Terry Equipment's territory during the same period of time that Terry Equipment had sold $95,107.00, implying that Terry Equipment could do better.

32.     When Terry Equipment informed Mr. Carey that Johnston couldn't sell direct to customers in Terry Equipment's exclusive territory, Johnston stated, "there's not much we can do about this unfortunately."

33.     Thereafter, Johnston equipment began to press Terry Equipment to buy a demonstrator model sweeper truck to use in its solicitation of sales in California and Nevada. The purchase price of the demonstrator model was approximately $200,000.00.

34.     Terry Equipment knew it was under no contractual obligation to purchase the demonstrator model from Johnston and, therefore took time to consider the investment.  Terry Equipment had already invested substantial sums in keeping Johnston-branded parts in inventory and, in fact, had approximately $50,000.00 of such inventory on hand.  Terry Equipment wanted to make sure that purchasing a demonstrator model was the most effective use of its capital in furthering the parties' business relationship.

35.     On or about May 2, 2018, when Terry Equipment didn't immediately agree to purchase a demonstrator model, Johnston informed Terry Equipment that it intended to continue selling Johnston-branded equipment, products and services in northern California, a part of Terry Equipment's exclusive territory, until Terry Equipment "commit[ted] to becoming an all-inclusive dealer" by purchasing a demonstrator model.

36.     Terry Equipment again reminded Johnston that its territory was exclusive and that if Johnston sold Johnston-branded equipment, parts and/or services in Terry Equipment's exclusive territory it would be in breach of the parties' Agreement.

37.     Pursuant to Part 3, Section 3 of the Agreement, Johnston was only permitted to convert Terry Equipment's territory to non-exclusive if Terry Equipment failed to comply with the Part 11 Performance Requirement and upon proper notice under Part 12 of the Agreement.

38.     At all times relevant to this action, Terry Equipment was in compliance with the Part 11 Performance Requirement under the Agreement.

39.     Moreover, Johnston never provided Terry Equipment with written notice transmitted by overnight courier of said alleged breach or of its intent to convert Terry Equipment's exclusive territory to non-exclusive.

**Johnston Gives Ineffective Notice of Termination**

40.     The Agreement allows for termination for cause and without cause.

41.     Part 7(2)(a) of the Agreement provides that the "Agreement may be terminated during the term … by either Johnston or Distributor at any time without cause upon at least 60 days prior written notice to the other party…."

42.     Parts 7(2)(b) and (c) of the Agreement provide that Johnston may terminate the Agreement effective immediately for acts in bad faith or material misrepresentations, material breaches of the Agreement, substantial change in ownership without notice and approval, or failure to pay sums due under the Agreement within ten (10) days of demand.

43.     On June 15, 2019, Johnston provided Terry Equipment with written Notice of Termination ("Notice of Termination") of the Agreement effective July 15, 2019. A copy of the Notice of Termination is attached hereto as **Exhibit 3** and is incorporated herein by this reference.

44.     Unless terminated under Parts 7(2)(a), (b) or (c), the renewal term of the Agreement extended through December 31, 2019.

45.     Johnston did not provide a basis for the Notice of Termination or specify whether it was for cause or without cause.

46.     Johnston had no basis to terminate the Agreement for cause under Part 7(2)(b) and/or (c) of the Agreement.

47.     Upon information and belief, Johnston attempted to terminate the Agreement without cause pursuant to Part 7(2)(a).

48.     The Notice of Termination provided by Johnston did not comply with Part 7(2)(a) of the Agreement in that it did not provide at least sixty (60) days prior written notice of termination to Terry Equipment. Rather, Johnston attempted to terminate the Agreement by providing only thirty (30) days prior written notice.

49.     Johnston also failed to deliver the Notice of Termination in compliance with the notice provisions contained in Part 12 of the Agreement.

50.     Due to Johnston's failure to comply with Part 7(2)(a) and Part 12 of the Agreement, the Notice of Termination was ineffective.

**Terry Equipment is Damaged by Johnston's Breach/Anticipatory Breach of the Agreement**

51.     Following the Notice of Termination Johnston would not sell Johnston-branded parts or equipment to Terry Equipment. This kept Terry Equipment from being able to meet prior customer commitments and/or perform under the terms of the Agreement, despite the fact that Johnston failed to properly terminate the Agreement.

52.     Until the Agreement is terminated in compliance with Parts 7(2)(a) and 12, Terry Equipment is entitled to continue selling Johnston-branded equipment, parts and services in its territory without interference and/or competition by Johnston.

53.     Terry Equipment has discovered that prior to providing Notice of Termination, Johnston had already opened a store in California in violation of the exclusive territory provisions in the Agreement.

54.     Upon information and belief, Johnston has been selling Johnston-branded equipment, parts and services in Terry Equipment's exclusive territory without Terry Equipment's knowledge or consent since February 20, 2017 in violation of the parties' Agreement. In 2018 alone, it is believed that Johnston sold at least $181,754.00 worth of Johnston-branded parts in Terry Equipment's exclusive territory.

55.     Upon information and belief, on or about May 30, 2019, Johnston bid to sell a Class 7 Municipal Street Sweeper to the City of San Francisco for $336,457.25. The City of San Francisco is located within Terry Equipment's exclusive territory. The City of San Francisco accepted the bid and purchased the Street Sweeper. Upon information and belief, Johnston made $67,200.00 in profit on this transaction.

56.     Johnston has failed, neglected and/or refused to reimburse Terry Equipment $2,112.05 for warranty claims that Terry Equipment completed on Johnston's behalf and for which Terry Equipment is entitled to reimbursement under the Agreement. All such warranty claims were related to Johnston-branded parts and were made within the 24-month period following Terry Equipment's receipt of such parts from Johnston.

57.     Johnston's unlawful conduct has interfered with Terry Equipment's ability to sell to customers within its exclusive territory and has decreased and/or denied Terry Equipment revenue and profits owed under the Agreement.

58.     Terry Equipment is entitled to recover all profits derived by Johnston in Terry Equipment's exclusive territory of Nevada and California from February 20, 2017 until July 15,

2019, including, but not limited to, profits derived on the $181,754.00 in revenue Johnston generated by selling Johnston-branded parts direct to customers located in Terry Equipment's exclusive territory, $67,200.00 in profit Johnston realized in selling a Street Sweeper to the City of San Francisco, and other profits realized by Johnston by selling Johnston-branded equipment, parts and/or services direct to customers in Terry Equipment's exclusive territory.

59.     Terry Equipment is also entitled to recover $2,112.05 for warranty claims it completed on Johnston's behalf during the term of the Agreement.

60.     Terry Equipment is also entitled to recover lost profits arising from Johnston's early termination and anticipatory breach of the Agreement from July 15, 2019 until the Agreement is properly terminated. Terry Equipment's historical gross profit on Johnston-branded parts and equipment from February 20, 2017 to July 15, 2019 was $119,623.94 and $190,633.16, respectively.

61.     Upon information and belief, Terry Equipment's damages in this case exceed Seventy Five Thousand and 00/100 Dollars ($75,000.00).

### Johnston Demand Return of Terry Equipment's Inventory But Fails to Provide Reimbursement Upon Return

62.     On July 10, 2019, Kevin Stutts, a Part Manager for Bucher Municipal North America, emailed Jon Kashack with Terry Equipment inquiring into the status of Terry Equipment's return of all Johnston-branded inventory.

63.     On July 19, 2019, following receipt of the Notice of Termination and Mr. Stutts' email, Terry Equipment shipped approximately $49,045.68 in Johnston-branded inventory in new, unused, complete, current and resalable condition to Johnston's Mooresville, North Carolina location.

64.     Part 7, Section 5 provides, in pertinent part, as follows:

Within 10 days after expiration, nonrenewal or termination of this Agreement, Distributor will return all information and other materials regarding the Equipment provided by Johnston to Distributor and will cease use of all Intellectual Property. **Johnston may repurchase all or any part of Distributor's inventory of Equipment at Distributor's purchase price (minus any rebates or applied discounts), provided that such Equipment is in new, unused, complete, current and resalable condition.** If any equipment is not in new, unused, complete, current and resalable condition, Johnston may repurchase such Equipment but deduct from the payment the cost of the repair or replacement necessary to put the Equipment in new, unused, complete, current and resalable condition. Johnston will provide Distributor with notice of such price reductions, if applicable, within ten days of inspection.

65.     To date, Johnston has failed to provide Terry Equipment with notice of any price reductions and has failed, neglected and/or refused to purchase and/or reimburse Terry Equipment for the inventory.

66.     As a result, in addition to damages suffered from Johnston's breach of the exclusive territory provisions of the Agreement, Terry Equipment has suffered additional damages due to Johnston's refusal to purchase its Johnston-branded inventory which, upon information and belief, had a Distributor purchase price value of at least Forty Nine Thousand Forty-Five and 68/100 Dollars ($49,045.68).

## FIRST CLAIM FOR RELIEF
### Declaratory Judgment

67.     The previous allegations are re-alleged and incorporated herein by reference.

68.     Terry Equipment, as a party to the Agreement, has standing to bring this declaratory judgment action pursuant to 28 U.S.C. § 2201, *et seq*. and Rule 57 of the Federal Rules of Civil Procedure.

69.     Terry Equipment contends and, upon information and belief, Johnston denies that:

a.      Pursuant to the Agreement, Terry Equipment was appointed to act as an exclusive distributor of Johnston-branded equipment, parts and services in

Nevada and Johnston-branded parts and services in California beginning February 20, 2017;

b.       The First Amendment modified Terry Equipment's exclusive territory under the Agreement to include distribution of Johnston-branded equipment, parts and services in Nevada, Johnston-branded equipment in San Luis Obispo, Kern, San Bernardino, Santa Barbara, Ventura, Los Angeles, Orange, Riverside, San Diego and Imperial, and Johnston-branded parts and service in all of California beginning April 1, 2017;

c.       Johnston and Terry Equipment waived the no-oral modification clause in Part 13(7) of the Agreement with respect to the Second Amendment by their course of conduct such that the Second Amendment became part of the parties' Agreement even though it was not reduced to writing signed by both parties;

d.       The Second Amendment modified Terry Equipment's exclusive territory under the Agreement to include distribution of Johnston-branded equipment, parts and services in all of Nevada and California beginning September 18, 2017;

e.       The Part 11 Performance Requirement required Terry Equipment to purchase a minimum of $20,000.00 of Johnston-branded replacement parts from Johnston during the term of the Agreement;

f.       The Part 11 Performance Requirement did not require Terry Equipment to purchase a minimum amount of Johnston-branded surface sweeper units from Johnston during the term of this Agreement;

g.       The Part 11 Performance Requirement could only be modified or amended by written agreement signed by Johnston and Terry Equipment;

h.     Johnston and Terry Equipment never modified or amended the Part 11 Performance Requirement;

i.     Terry complied with the Part 11 Performance Requirement during the term of the Agreement;

j.     As long as Terry Equipment satisfied the Part 11 Performance Requirement it was entitled to exclusivity as follows:

    i.     For distribution of Johnston of Johnston-branded equipment, parts and services in Nevada and Johnston-branded parts and services in California from February 20, 2017 until April 1, 2017;

    ii.     For distribution of Johnston-branded equipment, parts and services in Nevada, Johnston-branded equipment in San Luis Obispo, Kern, San Bernardino, Santa Barbara, Ventura, Los Angeles, Orange, Riverside, San Diego and Imperial, and Johnston-branded parts and service in all of California from April 1, 2017 to September 18, 2017; and

    iii.     For distribution of Johnston-branded equipment, parts and services in all of Nevada and California from September 18, 2017 to present (and until the Agreement is properly terminated);

k.     Johnston was not permitted to convert Terry Equipment's territory from exclusive to non-exclusive unless Terry Equipment failed to satisfy the Part 11 Performance Requirement and without giving Terry Equipment Notice under Part 12 of the Agreement;

l.      Johnston never provided Terry Equipment with notice in compliance with Part 12 of the Agreement that it had failed to satisfy the Part 11 Performance Requirement;

m.      On December 31, 2018, the term of the Agreement automatically extended on a year-to-year basis;

n.      Johnston provided Notice of Termination to Terry Equipment via U.S. mail on June 15, 2019 expressing its unequivocal intent not to perform under the Agreement beyond July 15, 2019;

o.      The Notice of Termination was without cause;

p.      Under Part 7(2)(a) of the Agreement, Johnston was required to give at least sixty (60) days' notice to Terry Equipment to terminate the Agreement without cause;

q.      Under Part 12 of the Agreement, all notices, demands, and other communications to Terry Equipment under the Agreement or in connection with the Agreement had to be in writing and had to be transmitted by overnight courier to Terry Equipment Inc., 205 Slover Ave, Bloomington, CA 92316;

r.      The Notice of Termination did not comply with Part 7(2)(a) of the Agreement;

s.      The Notice of Termination did not comply with Part 12 of the Agreement; and

t.      The Notice of Termination was not effective to terminate the Agreement.

70.     The parties to this action have legal rights and liabilities which are involved in this controversy and which may be determined by judgment or decree.

71.     A genuine, real and actual controversy exists between the parties with respect to the above contentions.

72.     Terry Equipment is entitled to a declaration from the Court on the issues set forth above.

73.     This Court has jurisdiction and authority to enter the declaratory relief requested in this matter.

## SECOND CLAIM FOR RELIEF
**Breach /Anticipatory Breach of Contract**

74.     The previous allegations are re-alleged and incorporated herein by reference.

75.     The Agreement, as amended, is a valid and binding contract under Delaware law and/or North Carolina law.

76.     Johnston is bound by the terms of the Agreement, as amended, by the offering of its terms, which were accepted by Terry Equipment.

77.     Johnston is also bound by the terms of the Agreement, as amended, by estoppel by its words, actions and omissions relied upon by Terry Equipment to its detriment.

78.     Johnston breached and/or anticipatorily breached the Agreement, as amended, in that, among other things:

      a.     During the term of the Agreement, Johnston distributed Johnston-branded equipment, parts and/or services to the following customers, among others, located in Terry Equipment's exclusive territory while Terry Equipment remained in compliance with the Part 11 Performance Requirement and/or before Johnston provided Part 12 notice to Terry Equipment that it was not in compliance with the Part 11 Performance Requirement depriving Terry Equipment of profits under the

Agreement: City of Roseville, TC Construction, Nixon, Vulcan Materials, Sea Side, and Santa Cruz;

b.      Johnston purported to convert Terry Equipment's exclusive territory to non-exclusive without cause and without proper notice under the Agreement;

c.      Johnston served the Notice of Termination on Terry Equipment purporting to terminate the Agreement effective July 15, 2019 and expressing its unequivocal intent not to perform under the Agreement beyond that date when, in fact, the termination was not effective under the Agreement, thereby impairing and/or interfering with Terry Equipment's ability to perform under the Agreement and depriving Terry Equipment of profits under the Agreement;

d.      Johnston failed to reimburse and/or compensate Terry Equipment for warranty claims Terry Equipment completed on Johnston's behalf during the term of the Agreement in accordance with Part 3(7) of the Agreement;

e.      Despite demanding and accepting delivery of Terry Equipment's Johnston-branded inventory following the Notice of Termination, Johnston failed to remit payment and/or reimburse Terry Equipment an amount equal to the distributor's purchase price value of the inventory, said value being at least Forty Nine Thousand Forty-Five and 68/100 Dollars ($49,045.68).

79.      Johnston's conduct constitutes material breaches and/or anticipatory breaches of the terms of the Agreement entitling Terry Equipment to recover from Johnston compensatory, consequential and incidental damages.

80.      As a direct and proximate result of Johnston's material breaches of the Agreement, Terry Equipment has been damaged and is entitled to recover compensatory,

consequential and incidental damages from Johnston in an amount in excess of Seventy Five Thousand and 00/100 Dollars ($75,000.00), plus costs and interest.

## THIRD CLAIM FOR RELIEF
### Breach of Implied Covenant of Good Faith and Fair Dealing

81.     The previous allegations are re-alleged and incorporated herein by reference.

82.     In North Carolina, in addition to the express terms, in every contract there is an implied covenant of good faith and fair dealing that neither party will do anything which injures the right of the other to receive the benefits of the agreement.

83.     In addition to performance of the express terms of the Agreement, Johnston owed Terry Equipment an implied duty of good faith and fair dealing in connection with the Agreement and was prohibited from doing anything that would injure Terry Equipment's right to receive the benefits of the Agreement.

84.     Johnston, acting with wrongful intent, deprived Terry Equipment of its contractual rights and breached the duty of good faith and fair dealing in that, among other things, Johnston:

> a.     Unfairly competed with Terry Equipment in Terry Equipment's exclusive territory in breach of the Agreement and then attempted to use Terry Equipment's sales figures to construct grounds to convert Terry Equipment's territory from exclusive to non-exclusive; and
>
> b.     Improperly and without authority attempted to force Terry Equipment to buy a demonstrator model sweeper truck for approximately $200,000.00 and threatened to complete with Terry Equipment in its exclusive territory until or unless Terry Equipment made such purchase.

85.     Johnston breached the implied covenant of good faith and fair dealing and thereby injured Terry Equipment's rights to receive the full benefits under the Agreement.

86.     As a direct and proximate result of Johnston's breaches of the implied covenant of good faith and fair dealing, Terry Equipment has been damaged and is entitled to recover compensatory, consequential and incidental damages from Johnston in an amount in excess of Seventy Five Thousand and 00/100 Dollars ($75,000.00), plus costs and interest.

**FOURTH CLAIM FOR RELIEF**
**In the Alternative, Unjust Enrichment**

87.     The previous allegations are re-alleged and incorporated herein by reference.

88.     The distributor purchase price value of the Johnston-branded inventory returned to Johnston under Part 7, Section 5 of the Agreement was at least Forty Nine Thousand Forty-Five and 68/100 Dollars ($49,045.68).

89.     If Johnston is allowed to retain the full value of these goods without paying or reimbursing Terry Equipment the distributor purchase price value, Johnston will be unjustly enriched in the amount of Forty Nine Thousand Forty-Five and 68/100 Dollars ($49,045.68), plus costs and interest.

**PRAYER FOR RELIEF**

For the foregoing reasons, Plaintiff requests that this Court enter a final judgment awarding to the Plaintiff against the Defendant the following:

1.     Declarations by this Court on the issues set forth above;

2.     An award of compensatory, consequential and incidental damages in an amount to be determined by the finder of fact, but in any case, in excess of Seventy Five Thousand and 00/100 Dollars ($75,000.00);

3. An award of pre and post-judgment interest as allowed by applicable federal and/or state law;

4. An award of the costs of this action, including Plaintiff's reasonable attorneys' fees; and

5. Any such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands trial by jury on all issues so triable.

This the 29th day of October, 2019.

Timothy D. Swanson

Timothy D. Swanson
N.C. State Bar No. 35598
Attorney for Plaintiff Terry Equipment, Inc.
YOUNG, MOPRHIS, BACH & TAYLOR, LLP
Post Office Drawer 2428
Hickory, NC 28603
Telephone (828) 322-4663
Fax: (828) 324-2431
timothys@hickorylaw.com

## **VERIFICATION**

Andru Small, first being duly sworn by law, deposes and says:

I am over the age of eighteen and am authorized to execute this Verification as President of Terry Equipment, Inc., the named Plaintiff in this civil action. I have read the foregoing Complaint and know the contents thereof. The factual matters stated therein are true and correct to the best of my knowledge and belief, based upon information available at this time.

TERRY EQUIPMENT, INC.

By: _Small_

Andru Small, President

STATE OF CALIFORNIA
COUNTY OF _Riverside_

I, _Krista Chavez_ , a Notary Public of said County and State, do hereby certify that Andru Small, President of Terry Equipment, Inc., personally came before me this day and, being authorized to do so, executed the foregoing Verification on behalf of the corporation.

WITNESS may hand and official seal this _24_ day of _October_ , 2019.

_Krista Chavez_
Notary Public
Printed Name: _Krista Chavez_
My Commission Expires: _Aug 15 2022_
Notary Seal

KRISTA CHAVEZ
COMM...2250368
NOTARY PUBLIC-CALIFORNIA
RIVERSIDE COUNTY
My Term Exp. August 15, 2022

# California All-Purpose Certificate of Acknowledgment

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

**State of California**

**County of Riverside**                                    S.S.

On _Oct. 24, 2019_ before me, _Krista Chavez X Notary Public_

*Name of Notary Public, Title*

personally appeared _Andrew Small_

*Name of Signer (1)*

_____

*Name of Signer (2)*

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_Krista Chavez_

*Signature of Notary Public*

KRISTA CHAVEZ
COMM...2250368
NOTARY PUBLIC-CALIFORNIA
RIVERSIDE COUNTY
My Term Exp. August 16, 2022

Seal

---------- *OPTIONAL INFORMATION* ----------

*Although the information in this section is not required by law, it could prevent fraudulent removal and reattachment of this acknowledgment to an unauthorized document and may prove useful to persons relying on the attached document*

## Description of Attached Document

The preceding Certificate of Acknowledgment is attached to a document titled/for the purpose of _Verification_ _verification President Terry Egvib_

containing _____ pages, and dated _10-24-19_.

The signer(s) capacity or authority is/are as:
- ☑ Individual(s)
- ☐ Attorney-in-fact
- ☐ Corporate Officer(s) _____

*Title(s)*

_____

- ☐ Guardian/Conservator
- ☐ Partner - Limited/General
- ☐ Trustee(s)
- ☐ Other: _____

representing: _____

*Name(s) of Person(s) or Entity(ies) Signer is Representing*

### Additional Information

**Method of Signer Identification**

Proved to me on the basis of satisfactory evidence:

☑ form(s) of identification ☐ credible witness(es)

Notarial event is detailed in notary journal on:

Page # _73_ Entry # _981_

Notary contact: _951-781-8486_

Other

- ☐ Additional Signer ☐ Signer(s) Thumbprints(s)
- ☐ _____